IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVOLVED WIRELESS, LLC,          )<br>                                 )<br>          Plaintiff,              )<br>                                 )<br>     v.                          )     Civil Action No. 15-544-JFB-SRF<br>                                 )<br>MOTOROLA MOBILITY LLC,           )<br>                                 )<br>          Defendant.             )| |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Presently before the court in this patent infringement action is a post-judgment motion to declare this case exceptional under 35 U.S.C. § 285 and award reasonable attorneys' fees, filed by defendant Motorola Mobility LLC ("Motorola"). (D.I. 420)[1] Plaintiff Evolved Wireless, LLC ("Evolved") opposes the motion. (D.I. 424) For the following reasons, Motorola's motion is DENIED.

### II.   BACKGROUND

In early 2014, LG Electronics ("LGE") sold a patent portfolio to TQ Lambda LLC ("TQ Lambda") that included United States Patent Nos. 7,746,916 ("the '916 patent"), 7,768,965 ("the '965 patent"), 7,809,373 ("the '373 patent"), 7,881,236 ("the '236 patent"), and 8,218,481 ("the '481 patent") (collectively, the "patents-in-suit"), which are directed to LTE wireless communication systems. (D.I. 1 at ¶¶ 30, 37, 44, 51, 55) The sale was governed by a Patent Purchase Agreement ("PPA") containing a warranty from LGE about encumbrances on the patent rights. (D.I. 186, Ex. J) In pertinent part, the PPA represented that,

---

[1] The briefing and declarations associated with the pending motion for attorneys' fees and costs are found at D.I. 421, D.I. 424, D.I. 425, D.I. 426, D.I. 430, D.I. 432, D.I. 433, and D.I. 435.

> [e]xcept for the Encumbrances identified in Exhibit B and Section 7.4 of this Agreement, Purchaser will not be subject to any covenant not to sue or similar restrictions on its enforcement or enjoyment of the Assigned Patent Rights as a result of any prior transaction related to the Assigned Patent Rights. The OFDM Agreement between Seller and Qualcomm, effective as of January 1, 2007, as amended from time to time, only provides a license to the Patents for Single Mode Chipsets.

(D.I. 186, Ex. J at § 6.3) TQ Lambda subsequently transferred its rights in the patents to its affiliate, Evolved, in September 2014. (D.I. 1 at ¶¶ 30, 37, 44, 51, 55) On June 25, 2015, Evolved filed six related cases, including the instant case, asserting infringement of the patents-in-suit. (D.I. 1)

In March 2016, Motorola served its first discovery requests on Evolved, seeking the production of documents regarding LGE's licensing and Evolved's acquisition of the patents-in-suit. (D.I. 316 at ¶ 2) In response to the request, Evolved produced the PPA between LGE and TQ Lambda. (D.I. 425, Ex. 3 at 5, 10-11) The PPA referred to a January 1, 2007 license agreement ("2007 Agreement") between Qualcomm, Inc. ("Qualcomm") and LGE, but the 2007 Agreement was not itself included in Evolved's production because Evolved claimed it was in the sole possession of TQ Lambda. (*Id.*; D.I. 425, Ex. 6; D.I. 186, Ex. J at Ex. B) Motorola served a subpoena on TQ Lambda in August 2016 for the production of license agreements between LGE and Qualcomm. (D.I. 425, Ex. 10 at 3; D.I. 72, Ex. B) Evolved and TQ Lambda represented that they would not oppose the subpoena, and they informed LGE of TQ Lambda's intent to comply with the subpoena absent issuance of a further protective order or an objection lodged with the court by LGE. (D.I. 425, Exs. 8, 10)

In accordance with TQ Lambda's confidentiality obligations to LGE, counsel for Evolved contacted LGE beginning in April 2016 to notify LGE of its intention to produce license agreements between Qualcomm and LGE in response to Motorola's discovery requests. (D.I.

2

425, Ex. 4) LGE objected to the production of the license agreements, accused TQ Lambda of breaching its nondisclosure agreement with LGE, and ordered Evolved to destroy the agreements. (*Id.*, Ex. 5) TQ Lambda refused to destroy the agreements in its possession, citing its obligation to maintain evidence during the ongoing litigation. (*Id.*, Ex. 6) A subpoena for the agreements was served on TQ Lambda in August 2016. (*Id.*, Ex. 9) Evolved's continued efforts to obtain LGE's consent to produce the license agreements culminated in LGE's proposal of an addendum to the protective order. (*Id.*, Ex. 14) Although Evolved and TQ Lambda raised no objection to LGE's proposed addendum, the record before the court suggests that Motorola did not affirmatively agree to it. (*Id.*; 9/7/2017 Tr. at 8:11-22)

In February 2017, Qualcomm was subpoenaed to produce its license agreements with LGE. (D.I. 180, Ex. A) Qualcomm produced the 2007 Agreement and other documents with LGE's consent. (*Id.*, Ex. C) The 2007 Agreement revealed the existence of an August 31, 1993 Qualcomm-LGE license agreement ("1993 Agreement"), which included covenants by LGE not to assert certain types of patents against Qualcomm or its customers. (D.I. 399 at 17-18, 27) Qualcomm produced the 1993 Agreement on May 24, 2017, more than a month after the close of fact discovery. (D.I. 144; 9/7/2017 Tr. at 10:3-10) The following week, Motorola informed Evolved that it intended to pursue a license defense based on the terms of the 1993 Agreement. (D.I. 190, Ex. 2)

The scope of the case was subsequently narrowed. On July 14, 2017, the court entered an order granting the parties' stipulation of dismissal with respect to the '916 patent, the '965 patent, and the '481 patent. (D.I. 156) On October 4, 2019, the Federal Circuit affirmed the PTAB's final written decision invalidating the asserted claims of the '236 patent. (D.I. 397, Ex. A) Following these events, only the '373 patent remained at issue in the litigation.

The court originally addressed Motorola's license defense based on the 1993 Agreement in February 2019, when it reserved consideration of the parties' cross-motions for summary judgment on the license defense for a bench trial to be held after the jury trial in Evolved's action against defendant Apple Inc. (D.I. 380 at 19-20) The court revisited the license defense in a December 2019 decision granting summary judgment in favor of Motorola, reasoning that "Evolved's claims against the defendants for infringement of the '373 Patent are barred by the licensing agreements executed by Qualcomm and LGE." (D.I. 399 at 29, 31; D.I. 410) In an opinion dated January 26, 2021, the Federal Circuit affirmed the court's determination that the terms of the 1993 Agreement barred Evolved's infringement claim during the term of the 1993 Agreement. (D.I. 416, Ex. A at 3) Following the issuance of the Federal Circuit's mandate, Evolved moved to dismiss with prejudice its remaining cause of action for infringement of the '373 patent. (D.I. 418) The court granted Evolved's unopposed motion to dismiss on April 15, 2021. (D.I. 419) Motorola then filed the pending motion for attorneys' fees pursuant to 35 U.S.C. § 285. (D.I. 420)

### III.   LEGAL STANDARD

Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has defined "an 'exceptional' case [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). When considering whether a case is exceptional, district courts are to exercise their discretion on a case-by-case basis, considering the totality of the circumstances. *Id.* Relevant factors for consideration include "frivolousness,

motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (internal quotation marks omitted). Cases which may merit an award of attorney fees include "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees" or "a case presenting either subjective bad faith or exceptionally meritless claims." *Id.* at 546. A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id.* at 557.

## IV. ANALYSIS

Evolved does not dispute Motorola's position that Motorola is the prevailing party following the dismissal with prejudice of Evolved's patent infringement claim. *See Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1036 (Fed. Cir. 2006) ("[T]he dismissal with prejudice . . . has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court properly could entertain [the defendant's] fee claim under 35 U.S.C. § 285."). Thus, the only issue is whether the case is exceptional. The court must evaluate the totality of the circumstances to determine whether this case warrants exceptional status under Section 285. *Octane Fitness*, 572 U.S. at 554.

### A. Evolved Did Not Bring a Baseless Lawsuit.

Motorola alleges that this case is exceptional because the terms of the 1993 Agreement placed Evolved on notice that the patents-in-suit were encumbered by the 1993 Agreement, and Evolved's proffered interpretation of the 1993 Agreement was therefore unreasonable. (D.I. 421 at 11-13) In response, Evolved argues that the 1993 Agreement did not describe the covered patents by number, inventor name, or other identifying information, and LGE failed to list the

5

1993 Agreement as an encumbrance when it sold the patents-in-suit to TQ Lambda.[2] (D.I. 424 at 12-13) Evolved points to the lengthy analyses of the district court and the Federal Circuit as evidence of the complexity of the contractual language and the need for construction of the 1993 Agreement. (*Id.*)

The court is not persuaded that Evolved's pursuit of the litigation was exceptionally meritless under the totality of the circumstances. There is no dispute that the 1993 Agreement was not listed as an encumbrance on the patents-in-suit when LGE entered into the PPA with TQ Lambda.[3] (D.I. 186, Ex. J at § 6.3 & Ex. B) It was not unreasonable for Evolved to rely on LGE's representations regarding encumbrances, which shaped Evolved's understanding that the 1993 Agreement did not cover the patents-in-suit. (D.I. 425, Ex. 5 at 1, 4) Although the shared managing director of TQ Lambda and Evolved, Ms. Abha Divine, was aware of the 1993 Agreement as early as 2013, Ms. Divine's awareness of the 1993 Agreement does not change the fact that it was not identified as an encumbrance on the patents-in-suit at the time of their sale.[4] (D.I. 327, Ex. G at EVOLVED-0642262-64; Ex. H at 67:16-19; 239:14-240:9)

---

[2] Evolved also relies on a declaration by LGE employee Younghan Song, which states that LGE did not identify the 1993 Agreement as an encumbrance on the patents-in-suit. (D.I. 308 at ¶ 55; D.I. 424 at 12) This declaration was the subject of a motion to strike by Motorola during summary judgment briefing. (D.I. 325; D.I. 326) The District Judge declined to consider the declaration in the court's ruling on summary judgment. (D.I. 399 at 5-6 n.5) Similarly, the court does not give weight to the challenged declaration in its analysis of the present motion.

[3] Motorola argues that "LGE had every incentive, as the seller of the asserted patents, to downplay the impact of any encumbrance at the time of sale and thereafter." (D.I. 430 at 7-8) But this does not explain why LGE would intentionally omit existing, applicable encumbrances from the PPA, which Motorola acknowledges could expose LGE to liability for breach of warranty or contract. (*Id.* at 6 n.4)

[4] In the 2013 communications between LGE and Ms. Divine about the 1993 Agreement, LGE acknowledged that the definition of the patents subject to the 1993 Agreement "refers to many other definitions" and is subject to a number of amendments. (D.I. 327, Ex. G at EVOLVED-0642262)

6

Moreover, the 1993 Agreement did not identify the patents it covered by patent number, inventor name, or other specific identifying information. (D.I. 186, Ex. A) Evolved reasonably interpreted the 1993 Agreement in a manner consistent with this lack of specificity and LGE's failure to identify the 1993 Agreement as an encumbrance on the patents-in-suit. Motorola cites no authority in which a court awarded fees under § 285 based on the existence of a patent license devoid of patent numbers, inventor names, or other specifying information to facilitate objective identification of the patents covered by the license.[5] (D.I. 421 at 11-13) On a motion brought under § 285, it is the movant who bears the burden of proving exceptional circumstances by a preponderance of the evidence. *St. Clair Intellectual Property Consultants, Inc. v. Toshiba Corp.*, C.A. No. 09-354-KAJ; 2015 WL 7451158, at *1 (D. Del. Nov. 23, 2015) (citing *Octane Fitness*, 134 S. Ct. 1749).

Motorola argues that the conclusive language in the court's summary judgment decision and the Federal Circuit's subsequent affirmance of the license defense analysis further supports its position that Evolved's interpretation of the 1993 Agreement was unreasonable. (D.I. 421 at 13; D.I. 430 at 2) Motorola cites the district court's declaration that "[t]he terms of the contracts at issue are not ambiguous," and "[i]t is clear to the court that Evolved bought the '373 Patent subject to the [1993 Agreement]," which covered all technology incorporating Qualcomm chipsets and barred owners of those patents from suing Qualcomm or its customers for infringement. (D.I. 399 at 6, 27) The Federal Circuit also rejected Evolved's proposed

---

[5] In *Summit Data Systems, LLC v. EMC Corp.*, C.A. No. 10-749-GMS, the applicable license agreement defined the licensed patents to include those listed in "Exhibit A" to the agreement, which identified the patents by number, date issued, title, and inventors. (C.A. No. 10-749-GMS, D.I. 238-8 at 119, 133-36) In *Bayer CropScience AG v. Dow AgroSciences LLC*, the relevant license agreement defined the "Licensed Patents" as any patent "claiming or having claimed priority" to certain patent applications specified by patent number and filing date. (C.A. No. 12-256-RMB-JS, D.I. 322, Ex. Z at 5-7)

interpretation of the term "Subscriber Units," explaining that it "ignores the established meaning" of the term. *Evolved Wireless, LLC v. HTC Corp.*, 840 F. App'x 586, 591 (Fed. Cir. 2021).

But Motorola's position fails to account for the surrounding circumstances, including heavy redactions in the 1993 Agreement which led the court to initially deny without prejudice Motorola's motion for summary judgment on the license defense in a February 2019 decision. (D.I. 380 at 20) Because certain contractual terms required construction and the redactions obscured the meaning of the 1993 Agreement, the court allowed the case to proceed to a jury trial on issues of infringement and validity before revisiting the merits of the license defense. (*Id.* at 20-21) The redactions described by the court in its ruling were also present in TQ Lambda's version of the 1993 Agreement. (D.I. 398 at 15:10-16:2) Had the interpretation of the 1993 Agreement been as straightforward as Motorola now suggests, the court could have disposed of the case based on the license defense before trying the issues of infringement and validity to a jury. Although Evolved did not ultimately prevail on its proposed interpretation of the 1993 Agreement, Evolved's position was not so unreasonable under the totality of the circumstances to warrant an award of exceptional case status pursuant to § 285. *See Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Motorola cites *Summit Data Systems, LLC v. EMC Corp.*, C.A. No. 10-749-GMS, 2014 WL 4955689 (D. Del. Sept. 25, 2014) in support of its position that a case is exceptional when the accused products are subject to a license agreement before claims for patent infringement are brought. (D.I. 430 at 2-3) But the law is well-established that the court must look to the totality of the circumstances when considering a motion for exceptional case status under § 285, and the imposition of fee shifting should be limited to truly exceptional cases. *See Octane Fitness, LLC*

*v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014) ("[I]nsofar as the imposition of fees under Section 285, even after *Octane Fitness*, remains an exception to the American Rule, the standard for finding a case exceptional befits its definition—'uncommon,' 'rare,' or 'not ordinary.'"). In *Summit Data*, the plaintiff brought its patent infringement suit only two months after negotiating and executing the license agreement, and then failed to disclose the license agreement for eighteen months. *Summit Data*, 2014 WL 4955689, at *4. In contrast, Evolved did not negotiate or execute the 1993 Agreement, nor did Evolved have the right to produce the 1993 Agreement without first obtaining consent from LGE. (D.I. 425, Ex. 4) Because the 1993 Agreement was not identified as an encumbrance when TQ Lambda purchased the patents-in-suit, the record does not definitively establish that Evolved understood the significance of the 1993 Agreement at the time it initiated the patent infringement suit. (D.I. 186, Ex. J at § 6.3) For these reasons, the circumstances in *Summit Data* are materially distinguishable. *See Summit Data*, 2014 WL 4955689, at *4; *see also Princeton Dig. Image Corp. v. Office Depot Inc.*, C.A. Nos. 13-329 *et al.*; 2016 WL 1533697, at *12 (D. Del. Mar. 31, 2016) (finding exceptional case status where the plaintiff executed a license agreement and did not inform its counsel of the license before filing suit).

Motorola also relies on *Bayer CropScience AG v. Dow AgroSciences LLC*, in which the court granted the defendant's motion for exceptional case status after concluding that Bayer's interpretation of the unambiguous contract language lacked substantive strength. C.A. No. 12-256-RMB-JS, 2015 WL 108415, at *5 (D. Del. Jan. 5, 2015).[6] In particular, the court revisited

---

[6] Motorola characterizes the court's decision in *Bayer* as "precedent." (D.I. 430 at 4) ("Next, Evolved attempts to distinguish this Court's precedent in *Bayer CropScience AG v. Dow AgroSciences LLC*, C.A. No. 12-256-RMB/JS, 2015 WL 108415, at *4 (D. Del. Jan. 5, 2015),

its summary judgment decision holding that Bayer's contract arguments were "inconsistent with and contrary to the full context, plain language, and business purpose of the key agreements." *Id.* at *4 (internal quotation marks omitted). Motorola juxtaposes the court's ruling in *Bayer* with language from the district court and Federal Circuit in the present case stating that "[t]he terms of the contracts at issue are not ambiguous" and "Evolved's proposed interpretation is not consistent with" a "natural reading" of the terms and "ignores the[ir] established meaning." (D.I. 399 at 6); *Evolved Wireless, LLC v. HTC Corp.*, 840 F. App'x 586, 591 (Fed. Cir. 2021).

But any weaknesses in Evolved's proposed interpretation of the 1993 Agreement are offset by the surrounding circumstances in this case, and no comparable circumstances were present in *Bayer CropScience*. The 1993 Agreement's failure to objectively identify the licensed patents and LGE's misleading warranty regarding encumbrances on the patents-in-suit plausibly shaped Evolved's understanding of the scope of the 1993 Agreement before the case was filed. (D.I. 186, Ex. J at § 6.3) Moreover, the district court's initial decision to defer ruling on the license defense until after the conclusion of a jury trial on infringement and validity supports Evolved's position that the scope of the 1993 Agreement was obscured. (D.I. 380 at 20-21) In this regard, the facts of this case are distinguishable from *Bayer*.[7]

---

with similarly baseless, unsupported distinctions."). For clarity of the record, intra-district federal court decisions are not precedential. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted); *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) ("[A] district court's decision, whether published in a reporter or not, binds only the parties in *that* case and no judge in any other case.") (citation and internal quotations omitted). Likewise, unpublished decisions have no precedential value. *See Smith v. Sch. Dist. of Phila.*, 158 F. Supp. 2d 599, 607 n.5 (E.D. Pa. 2001); *see also Lebron v. U.S.*, 279 F.3d 321, 326 (5th Cir. 2002) ("Unreported decisions generally lack precedential value.").

[7] Evolved argues that the Federal Circuit's lengthy decision issued in this case, as compared to its perfunctory Rule 36 affirmance in *Bayer*, further distinguishes this matter from *Bayer*. (D.I. 424 at 15) However, the court derives no conclusions from the brevity or length of any Federal

Finally, the parties dispute whether litigation on the '236 patent would have continued even if Evolved had conceded that the '373 patent was subject to the covenants not to sue in the 1993 Agreement. According to Evolved, the '236 patent was not subject to the 1993 Agreement because it was acquired or developed after December 31, 2006. (D.I. 432 at 1) Motorola argues that Evolved implicitly conceded that the 1993 Agreement applies to the '236 patent in a complaint filed in the Northern District of Illinois. (D.I. 435 at 1) Having determined that Evolved's interpretation of the 1993 Agreement was not unreasonable or baseless under the unique factual circumstances of this case, the court need not reach the issue of whether the '236 patent is subject to the 1993 Agreement.

### B. Evolved Did Not Engage in Unreasonable Litigation Tactics.

Motorola accuses Evolved of engaging in unreasonable litigation tactics by failing to timely disclose the 1993 Agreement during fact discovery. According to Motorola, Evolved had access to the 1993 Agreement and understood its relevance to the patents-in-suit due to the affiliation between Evolved and TQ Lambda.[8] (D.I. 421 at 11-12, 14-16) But Evolved argues that it diligently sought to respond to Motorola's discovery requests by reaching out to LGE for

---

Circuit decisions. "Federal Circuit Rule 36 allows the court to issue judgments of affirmance without issuing an opinion" to confirm that the district court entered the correct judgment. *Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 558 (Fed. Cir. 2021) (citing Fed. Cir. R. 36). "[I]mportantly, noting in the rule or in [Federal Circuit] precedent suggests that a summary affirmance under Rule 36 is an indication that a case was meritless, frivolous, or even weak." *Id. But see Bayer CropScience*, 2015 WL 108415, at *5 (considering the Federal Circuit's Rule 36 affirmance as further evidence that the plaintiff's arguments were exceptionally weak).

[8] The record reflects that TQ Lambda was Evolved's predecessor-in-interest, and the entities share the same office space, computers, and file servers. (D.I. 327, Ex. H at 78:6-80:25) Moreover, both entities share the same managing directors, Ms. Abha Divine and Mr. Mark Roche, who are the only two employees associated with the companies. (*Id.* at 41:4-12, 63:3-10, 67:8-19, 72:13-17)

11

consent to produce the license agreements and informing Motorola that TQ Lambda was in possession of the responsive documents. (D.I. 424 at 16-17)

Evolved's litigation conduct does not warrant a finding of exceptional case status. There is no dispute that Evolved was not a party to the license agreements. *Cf. Summit Data Sys., LLC v. EMC Corp.*, 10-749-GMS, 2014 WL 4955689, at *3 (D. Del. Sept. 25, 2014) (finding case exceptional because the plaintiff brought suit two months after executing a license agreement, and then failed to disclose the existence of the license agreement to the defendant for eighteen months). The record before the court shows that Evolved and TQ Lambda[9] communicated diligently with LGE to facilitate the production of the license agreements. (D.I. 425, Ex. 4; Ex. 6 at 1; Ex. 10 at 1; Ex. 13) In April 2016, Evolved informed LGE of its intention to produce license agreements between LGE and Qualcomm during this litigation, assuring LGE that the operative protective order would adequately protect any confidential information contained in the license agreements. (*Id.*, Ex. 4 at 1) In July and September 2016, TQ Lambda cited its "affirmative duty under United States law to preserve" the license agreements in response to LGE's demand that TQ Lambda return or destroy the agreements. (*Id.*, Ex. 6 at 2; Ex. 10 at 2) TQ Lambda also confirmed its intent to comply with the subpoena and produce the license agreements in September 2016 unless LGE sought relief from the court. (*Id.*, Ex. 10 at 3)

The record also reflects that Evolved and TQ Lambda made efforts to alleviate LGE's confidentiality concerns by proposing modifications to the protective order. (D.I. 425, Ex. 14)

---

[9] Regardless of whether Evolved, TQ Lambda, or both entities were in possession of the licensing agreements, the record shows that Evolved and TQ Lambda worked cooperatively to respond to Motorola's discovery requests and subpoena. (D.I. 425, Exs. 4, 6, 8, 10) Ultimately, the record is clear that LGE's withholding of consent was the primary hurdle Evolved faced in responding to Motorola's discovery requests. (*Id.*, Ex. 8; Ex. 11 at 9) In its reply brief, Motorola does not challenge Evolved's position that the PPA imposes ongoing obligations regarding LGE's confidential information. (D.I. 430 at 9-10; *see* D.I. 425, Ex. 6)

LGE ultimately consented to the production of the license agreements on the condition that the parties would accept its addendum to the protective order. (*Id.* at 1) While the record lacks a full explanation of why the addendum was never incorporated into the protective order, the implication is that Motorola did not agree to it. (*Id.*) ("Counsel for the Defendants have not yet provided a definitive response as to whether they will agree to the Addendum, but we are in the process of scheduling a conference with them shortly to address any concerns they may have.").

LGE's failure to consent to the production of the license agreements cannot properly be attributed to Evolved. (D.I. 425, Ex. 5 at 1; Ex. 12) The present record does not clarify why LGE consented to Qualcomm's production of the license agreements after persistently withholding its consent from Evolved and TQ Lambda. (D.I. 180, Ex. C) But it does show that Evolved and TQ Lambda communicated promptly and regularly with LGE to facilitate the production of the license agreements. (D.I. 425, Ex. 4; Ex. 6 at 1; Ex. 10 at 1; Ex. 13; Ex. 14) These facts do not support Motorola's position that Evolved purposely withheld production of the license agreements.

## V. CONCLUSION

For the foregoing reasons, Motorola's motion to declare the case exceptional under 35 U.S.C. § 285 and award reasonable attorneys' fees is DENIED. (D.I. 420) An Order consistent with this Memorandum Opinion shall issue.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Opinion under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **July 14, 2021**, for review by the court, along with a motion supported by a declaration that includes a

clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Opinion issued.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: July 7, 2021

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE